UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| FRANCISCO SANTIAGO, as husband of Michelle Ann Portillo, the deceased wage earner, <br><br> Plaintiff, <br><br> v. <br><br> NANCY BERRYHILL, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | Case No.: 4:17-cv-00209-MHH |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Francisco Santiago, as husband of Michelle Ann Portillo, deceased, seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Portillo's claims for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Portillo applied for a period of disability and disability insurance benefits and supplemental security income on December 1, 2014. (Doc. 7-4, pp. 3, 5). Ms. Portillo alleged that her disability began on September 1, 2012. (Doc. 7-

4, pp. 3, 5). The Commissioner initially denied Ms. Portillo's claims on May 4, 2015. (Doc. 7-5, pp. 2-10). On May 8, 2015, Ms. Portillo requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-5, p. 13). Ms. Portillo passed away on April 16, 2016, and her husband, plaintiff Francisco Santiago, was substituted as a party. (Doc. 7-5, p. 66; Doc. 7-7, p. 23).

The ALJ conducted a hearing on July 28, 2016, and he issued a partially favorable decision on August 19, 2016. (Doc. 7-3, pp. 15-59). The ALJ found that Ms. Portillo was disabled as of December 1, 2014, the date of her applications. The ALJ found that Ms. Portillo was not entitled to disability insurance benefits because the ALJ determined that Ms. Portillo was not disabled from her alleged onset date of September 1, 2012 through her date last insured of September 30, 2013. The ALJ found that Ms. Portillo was entitled to supplemental security income because she was disabled on December 1, 2014, the date she applied for benefits. (Doc. 7-3, p. 29).[1] On December 8, 2016, the Appeals Council declined Mr. Santiago's request for review (Doc. 7-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

## II. STANDARD OF REVIEW

---

[1] "Unlike [supplemental security income], which has no insured status requirement, a claimant must demonstrate disability on or before the last date on which she was insured in order to be eligible for [disability insurance benefits]." *Moncrief v. Astrue*, 300 Fed. Appx. 879, 880 n.1 (11th Cir. 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide

sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Portillo had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date. (Doc. 7-3, p. 21). The ALJ determined that from the alleged onset date of September 1, 2012 through the date last insured of September 30, 2013, Ms. Portillo suffered from the following severe impairments: anxiety disorder; history of non-Hodgkin's lymphoma; history of carpel tunnel syndrome, left; history of hepatitis C; peripheral neuropathy; chronic obstructive pulmonary disease/asthma; gastroesophageal reflux disease; and degenerative joint disease, right knee. (Doc.

7-3, p. 21). The ALJ determined that Ms. Portillo suffered from the non-severe impairment of history of hypertension. (Doc. 7-3, p. 22). Based on a review of the medical evidence, the ALJ concluded that before December 1, 2014, Ms. Portillo did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 21).

In light of Ms. Portillo's impairments, the ALJ evaluated Ms. Portillo's residual functional capacity. The ALJ determined that before September 30, 2013, Ms. Portillo's date last insured, Ms. Portillo had the RFC to perform:

> light exertional work as defined in 20 CFR 404.1567(b) and 416.967(b). The undersigned further finds, however, that the full range of light work that could have been performed by the claimant is reduced by the following functional limitations: the claimant would require a sit/stand option with the retained ability to stay on or at a work station in no less than 30 minute increments each without significant reduction of remaining on task and she was able to ambulate short distances up to 75 yards per instance on flat hard surfaces. She was able to occasionally use bilateral foot controls, occasionally use left, non-dominant hand controls, and frequently use right dominant hand controls. She could have frequently reached overhead as well as all other directions with the left non-dominant hand. She could have frequently handled, fingered and felt with the left non-dominant hand. She could have occasionally climbed ramps and stairs but never have climbed ladders or scaffolds. She could have frequently balanced and stooped but could never have crouched, kneeled, or crawled. The claimant could never have been exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes, or operated commercial vehicles. She could have tolerated no exposure to concentrated dust, fumes, gases, or other pulmonary irritants. The undersigned further finds that the claimant could have only remembered short simple instructions and

would have been unable to deal with detailed or complex instructions. She could have done simple routine repetitive tasks but would have been unable to do detailed or complex tasks. She would have been limited to making simple work related decisions. The claimant should have had no more than occasional interaction with the general-public but could have frequent interaction with co-workers and supervisors. She would have been able to accept constructive non-confrontational criticism, work in small group settings, and been able to accept changes in the work place setting if introduced gradually and infrequently. She would have been unable to perform assembly line work with production rate pace, but could perform other goal-oriented work. In addition to normal weekday breaks, she would have been off-task 5% of an 8-hour workday (non-consecutive minutes).

(Doc. 7-3, pp. 24-25).

Based on this RFC, the ALJ concluded that since September 1, 2012, Ms. Portillo would have been unable to perform her past relevant work as a sitter/home health aide. (Doc. 7-3, p. 25). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Portillo could have performed, including storage facility rental clerk, shipping/receiving weigher, and sorter. (Doc. 7-3, p. 26). Accordingly, the ALJ determined that Ms. Portillo had not been under a disability within the meaning of the Social Security Act at any time through September 30, 2013, the date last insured, and therefore, was not entitled to disability insurance benefits. (Doc. 7-3, pp. 28-29).

The ALJ also determined that beginning on December 1, 2014, Ms. Portillo's application date, she suffered from the following severe impairments: obsessive-compulsive disorder; panic disorder; major depressive disorder,

6

recurrent, moderate with anxious distress; history of non-Hodgkin's lymphoma; history of carpel tunnel syndrome, left; history of hepatitis C; peripheral neuropathy; chronic obstructive pulmonary disease/asthma; synchronous endometrial and ovarian primary cancer; gastroesophageal reflux disease; and degenerative joint disease, right knee; arthritis; and neuropathy. (Doc. 7-3, p. 28). Based on a review of the medical evidence, the ALJ concluded that Ms. Portillo's synchronous endometrial and ovarian primary cancer met Listing 13.23. (Doc. 7-3, pp. 28-29). Accordingly, the ALJ determined that Ms. Portillo was entitled to supplemental security income benefits. (Doc. 7-3, p. 29).

## IV. ANALYSIS

Mr. Santiago argues that he is entitled to relief from the ALJ's decision because the ALJ erred in assigning a December 1, 2014 onset date; the ALJ's RFC analysis is conclusory and does not comply with SSR 96-8p; and the ALJ failed to apply Grid Rule 201.14. The Court examines each issue in turn.

### A. December 1, 2014 Onset Date

Mr. Santiago argues that the ALJ erred in assigning a disability onset date of December 1, 2014 instead of September 1, 2012. According to Mr. Santiago, as of September 1, 2012, Ms. Portillo "was receiving treatment for Hepatitis C, anxiety, malignant hypertension, severe low back pain, peripheral neuropathy with numbness of the hands and feet, as well as fatigue." (Doc. 9, p. 24). Mr. Santiago

has not demonstrated how Ms. Portillo's treatment for these diagnoses establishes that Ms. Portillo had functional limitations associated with the diagnoses. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *see* SSR 83-20, 1983 WL 31249, at *3 ("The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] for a continuous period of at least 12 months or [to] result in death.").

To determine the onset date for disabilities of nontraumatic origin, an ALJ must consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, 1983 WL 31249, at *2. Here, the ALJ acknowledged that Ms. Portillo alleged an onset date of September 1, 2012. (Doc. 7-3, p. 19). The ALJ considered Mr. Santiago's testimony that after Ms. Portillo was in remission for non-Hodgkin's lymphoma, she wanted to return to work, but Mr. Santiago did not let her. (Doc. 7-3, pp. 25, 46-47). The ALJ also reviewed all of the medical evidence in the record which demonstrates that Ms. Portillo's condition declined after September 30, 2013, her

date last insured, and the ALJ concluded that as of December 1, 2014, Ms. Portillo was disabled because her endometrial and ovarian cancer met Listing 13.23. (Doc. 7-3, p. 28).

The ALJ noted, for example, that Ms. Portillo began experiencing increased abdominal pain before her December 1, 2014 application date which continued into 2015 and 2016. On February 16, 2014, Mr. Portillo went to the ER complaining of lower abdominal pain, nausea, vomiting, and back pain. (Doc. 7-11, p. 34). Doctors diagnosed Ms. Portillo with a small bowel obstruction and abdominal pain and ordered a surgery consultation. (Doc. 7-11, pp. 37-38). In early January 2015, Ms. Portillo's primary care physician diagnosed her with abdominal pain. (Doc. 7-12, p. 6). A June 2015 CT scan revealed a left ovarian cyst, and another CT scan in October 2015 showed that the cyst had grown from 4 centimeters to 6.2 centimeters. (Doc. 7-16, pp. 15, 27). In December 2015, doctors diagnosed Ms. Portillo with papillary carcinoma. (Doc. 7-14, pp. 7-8, 11). Ms. Portillo's tumor was "present within the endometrium where it exhibit[ed] deep myometrial invasion to the outer half of the underlying myometrium and also exhibit[ed] lymphovascular invasion within the myometrium." (Doc. 7-14, p. 15). By February 2016, Ms. Portillo was in septic shock, and she died of sepsis in April 2016. (Doc. 7-7, p. 23; Doc. 7-14, p. 39).

In support of his argument that the ALJ should have assigned an onset date of September 1, 2014, Mr. Santiago cites *Keeton v. Barnhart*, 377 F. Supp. 2d 1154 (N.D. Ala. 2005). (Doc. 9, pp. 24-25). *Keeton* does not assist Mr. Santiago. In *Keeton*, the ALJ awarded supplemental security income benefits after finding that the claimant was disabled eight years after the claimant's alleged onset date. *Keeton*, 377 F. Supp. 2d at 1157. The ALJ found that the claimant had not sought mental health treatment until the year in which the ALJ found that the claimant was disabled. *Keeton*, 377 F. Supp. 2d at 1158. The district court held that substantial evidence did not support this finding and that the ALJ committed reversible error in his "near complete disregard" of a psychologist's report dated one month after the claimant's alleged onset date which "provided significant detail and testing results." *Keeton*, 377 F. Supp. 2d at 1158. Because the earlier mental examination report and the later report contained similar conclusions, the district court found that the claimant's disability "was documented by substantial evidence" within one month of the alleged onset date and ordered that the Commissioner pay disability benefits consistent with the date of the initial mental status report. *Keeton*, 377 F. Supp. 2d at 1159.

Unlike *Keeton*, the ALJ in this case did not overlook significant reports or findings documenting physical or mental impairments that prevented Ms. Portillo from engaging in substantial gainful activity during the relevant period of

10

September 1, 2012 through September 30, 2013. Rather, the ALJ noted that the one physical examination during this period on December 26, 2012 revealed no remarkable findings. (Doc. 7-11, pp. 90-92). The ALJ then reviewed Ms. Portillo's longitudinal treatment history for the years preceding her alleged onset date and assigned various limitations based on those medical records. (Doc. 7-3, p. 26).

Citing SSR 83-20, Mr. Santiago contends that if the ALJ was going to reject Ms. Portillo's alleged onset date and identify a different onset date, then the ALJ was required to consult a medical advisor. (*See* Doc. 9, p. 25). The Court disagrees.

Under SSR 83-20, an ALJ "should" consult a medical advisor if the ALJ must infer the disability onset date, and the medical evidence is inadequate. The ALJ has no such obligation if the medical evidence in the administrative record is adequate. SSR 83-20 provides:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, 1983 WL 31249, at *3.

The Commissioner recently clarified that SSR 83-20 does not require an ALJ to consult a medical expert even if the ALJ must infer a disability onset date. In an emergency message, the Commissioner explained that "SSR 83-20 does not impose a mandatory requirement on an ALJ to call on the services of a medical expert when onset must be inferred. Instead, the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion." Emergency Message: Clarification of [SSR] 83–20–Titles II and XVI: Onset of Disability, TTPS://secure.ssa.gov/apps10/reference.nsf/links/10172016104408AM, last visited May 25, 2018; *see also* Doc. 10-1.

In any event, the Court finds that this is not a case where the ALJ had "to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." SSR 83-20, 1983 WL 31249, at *3. Rather, the medical records demonstrate that Ms. Portillo's onset date was after her date last insured. The record contains numerous medical examinations from both before and after Ms. Portillo's date last insured, but as the ALJ found, none of the records that pre-date Ms. Portillo's date last insured established that Ms. Portillo had disabling impairments. Accordingly, the ALJ did not err by failing to consult a medical advisor. *See O'Neal v. Comm'r of Soc. Sec.*, --- Fed. Appx. ----, 2018 WL 2111067 (11th Cir. May 8, 2018).

## B. RFC Determination

The RFC describes the types of work that a claimant may perform despite severe and non-severe impairments. *Maffia v. Comm'r of Soc. Sec.*, 291 Fed. Appx. 261, 263 (11th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)). An ALJ has the authority to determine a claimant's residual functional capacity, and "the ALJ considers all of the evidence in the record in determining the claimant's RFC." *Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 764 (11th Cir. 2014). Here, the ALJ determined that before September 30, 2013, her date last insured, Ms. Portillo could have performed a range of light work with a number of postural, exertional, and environmental limitations.

Mr. Santiago argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC is conclusory and does not comply with SSR 96-8p. (Doc. 9, pp. 25-30). The Court disagrees.

SSR 96-8p states that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

. . .

>The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.
>
>. . .
>
>The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted).

In making his decision, the ALJ:

>considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1520 and 416.920 and SSR 96-4p.

(Doc. 7-3, p. 25). In addition to medical and objective evidence, the ALJ considered the one formal medical opinion submitted in the record. (Doc. 7-3, pp. 25-26). The ALJ considered Mr. Santiago's testimony about Ms. Portillo's limitations, the one physical examination during the relevant period which "indicated no substantial difficulties," and Ms. Portillo's longitudinal treatment history. (Doc. 7-3, pp. 25-26; *see* Doc. 7-11, pp. 90-92). The ALJ's decision sufficiently indicates that he considered all of the relevant evidence in arriving at his RFC determination. *See Carson v. Comm'r of Soc. Sec.*, 440 Fed. Appx. 863, 864 (11th Cir. 2011) ("Following [SSR 96-8p's] rubric, the ALJ fully discussed

and evaluated the medical evidence, [the claimant's] testimony, and the effect each impairment has on [the claimant's] daily activities.")

Contrary to Mr. Santiago's suggestion that the ALJ found that Ms. Portillo has "minor physical limitations" or "no functional limitations," (*see* Doc. 9, p. 27), the ALJ restricted Ms. Portillo to less than a full range of light work. This RFC assessment suggests that the ALJ found that Ms. Portillo had a number of functional difficulties for which the ALJ accounted in his RFC determination. The ALJ complied with SSR 96-8p because the ALJ considered Ms. Portillo's functional limitations and explained why the evidence supported his analysis.

**C.    Grid Rule 201.14.**

Ms. Portillo turned 50 years old on September 3, 2013. Mr. Santiago argues that "[t]here is no evidence that [Ms. Portillo could] perform light work" and that "[i]f a claimant is found to have sedentary work capacity, then the ALJ may not mechanically apply the age criteria of the Grids." (Doc. 9, p. 31). Therefore, Mr. Santiago suggests that the ALJ must conclude that Ms. Portillo presumptively was entitled to disability benefits under Grid Rule 201.14. (Doc. 9, pp. 30-32). Under this rule, an individual approaching advanced age (50-54) with a high school education that does not provide for direct entry into skilled work and past work experience at a skilled or semi-skilled level with non-transferable skills is "disabled" under the grid. *See* C.F.R. § 404, Subpart P, Appx. 2, Table 1. Mr.

Santiago cites no evidence demonstrating that Ms. Portillo was limited to sedentary work, and because substantial evidence supports the ALJ's decision that before September 30, 2013, Ms. Portillo could have performed light work and was not limited to sedentary work, *see supra* pp. 12-15, the ALJ was not required to consider Grid Rule 201.14.

## V. CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** this 29th day of June, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE